```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NEW YORK SMSA LIMITED PARTNERSHIP,
doing business as Verizon Wireless,

                Plaintiff,         MEMORANDUM & ORDER
                                   08-CV-4833 (JS) (AKT)
        -against-

TOWN OF OYSTER BAY ZONING
BOARD OF APPEALS,

                Defendant.
----------------------------------X
```

APPEARANCES:
For Plaintiff:    Alfred L. Amato, Esq.
                  Richard Stephen Keenan, Esq.
                  Amato Law Group, PLLC
                  666 Old Country Road, Suite 901
                  Garden City, NY 11530

For Defendant:    Timothy F. Hill, Esq.
                  Sinnreich & Kosakoff LLP
                  267 Carleton Avenue
                  Central Islip, NY 11722

SEYBERT, District Judge:

On December 1, 2008, Plaintiff, New York SMSA Limited Partnership ("Verizon") commenced this action under the Federal Telecommunications Act of 1996 ("TCA") against Defendant, Town of Oyster Bay Zoning Board of Appeals ("Defendant" or "Board"). Plaintiff claims that Defendant unlawfully denied its application for a special use permit, which would enable it to install the requisite equipment to eliminate a coverage gap in its cellular network. Pending before the Court is Verizon's motion for summary judgment, wherein it seeks an injunction

directing the Defendant to grant its application and issue the special use permit and/or variance and such other permits or licenses that are necessary to complete the installation. For the reasons set forth herein, the Court GRANTS Verizon's motion.

BACKGROUND

Verizon is considered a public utility under the laws of the State of New York. See Cellular Tel. Co. v. Rosenberg, 82 N.Y.2d 364, 371-72, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993). Additionally, Verizon is considered a "telecommunications carrier" under the Communications Act of 1934, the United States Telecommunications Act of 1996 (the "TCA") and the rules, regulations and orders of the Federal Communications Commission (the "FCC"). As such, Verizon Wireless is licensed by the FCC, to provide wireless telephone service throughout New York, including the Bethpage area. (Pl.'s 56.1 Stmt. ¶¶ 1-3.)

The Board is responsible for, inter alia, the review of Special Use Permit ("SUP") Applications submitted in connection with the construction of wireless communication facilities, pursuant to Town Code § 246-5.5.9.3. (Def.'s 56.1 Counter-Stmt. ¶ 4.) According to the Town Code, cellular communications towers and antennas are permitted in the General

Business zoning district when approved as a special use by the Board. (Id. ¶ 13.)[1]

As of 2007, Verizon was experiencing coverage gaps in the Bethpage area. To completely or partially eliminate these coverage gaps, Verizon sought to erect, operate, and maintain a public wireless communication facility ("Facility") at 40 Seaman Avenue, Bethpage, New York ("Property"). On or about March 8, 2007, Verizon submitted an application ("Application") to the Board to obtain a SUP for the Facility. The Facility would be designed as follows:

> ten wireless panel antennas, designed using stealth technology, equipment within an equipment shelter and related appurtenances. Stealth material will be used to hide the antennas and will be designed to resemble the existing bricks on the Building. Two antennas will be mounted flush to the wall of the Building facing Central Avenue and painted to match the Building. Eight antennas will be placed on the existing penthouse of the Building and concealed within stealth material. The equipment shelter will be 12 feet by 30 feet and located on the Building rooftop. Equipment shelter will match the facade of the Building.

(Pl.'s 56.1 Stmt. ¶¶ 22-24.)

On March 27, 2008, the Board held a public hearing on the Application ("Hearing"). At the Hearing, Verizon presented substantial evidence that (1) the Facility would be largely

---

[1] Here, both parties concede that all the proposed sites for communications towers and/or antennas are within the General Business zoning district.

3

concealed, so as to minimize the visual impact on the surrounding area, (2) Verizon considered other proposed sites for the Facility's placement, and (3) the other proposed sites were inappropriate for several reasons, including, most importantly, that placement of the Facility at any of the other proposed sites would not remedy the coverage gaps or could result in future coverage gaps. In response, several residents opined as to why the Property was an inappropriate site for the facility. They provided <u>no evidence</u> to support their positions, and no experts testified except for those called in support of Verizon's Application. Nevertheless, by written decision dated October 16, 2008 ("Denial"), the Board denied the Application on three grounds: (1) the aesthetic appearance/visual aspect of the proposed Facility would be "out of character" with the Building; (2) Verizon did not sufficiently establish the need for the Communication Facility; and (3) there was an "inadequate investigation" of alternative sites. (Pl.'s 56.1 Stmt. ¶ 58; Def.'s 56.1 Counter-Stmt. ¶ 58.)

DISCUSSION

I. <u>Federal Rule of Civil Procedure 56: Summary Judgment</u>

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 213 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 258, 106 S. Ct. at 2515, 91 L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

5

II. TCA Claim

    A. Court Review of Zoning Decisions Under the TCA

In enacting the TCA, Congress did not intend to federalize land use law; rather, local governments retain control over "decisions regarding the placement, construction, and modification of personal wireless facilities," 47 U.S.C. § 332(c)(7)(A), but their siting determinations are subjected to an expanded scope of judicial review to prevent against unreasonable discrimination among providers or the effective prohibition of wireless services. See 47 U.S.C. § 332(c)(7)(B)(i); 47 U.S.C. § 332(c)(7)(B)(v); see also Sprint Spectrum, L.P. v. Town of North Stonington, 12 F. Supp. 2d 247, 256 (D. Conn. 1998). Regulations which are facially neutral may be found to have the effect of prohibiting personal wireless services. See Town of Amherst v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 14 (1st Cir. 1999); Va. Metronet, Inc. v. Bd. of Supers., 984 F. Supp. 966, 971 (E.D. Va. 1998). In the Second Circuit, the denial of a permit for a site that is shown to be the least intrusive means to close a significant gap in service is a violation of the TCA. See Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir. 1999).

Subsection 332(c) of the TCA provides, in relevant part:

(7) Preservation of local zoning authority

   (A) General authority

   Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless services facilities.

   (B) Limitations

   (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof

      (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

      (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

   (ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

   (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and

> supported by substantial evidence in
> the record.

47 U.S.C. § 332(c)(7).

"A local zoning commission, which acts in an administrative capacity when considering an application for a special permit, does not have discretion to deny the permit if the proposal meets the relevant standards enumerated in the regulations." SBA Communications, Inc. v. Zoning Comm'n of Town of Brookfield, 112 F. Supp. 2d 233, 237 (D. Conn. 2000). For purposes of 332(c)(7)(iii), substantial evidence means "less than a preponderance, but more than a mere scintilla of evidence." Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999). Although courts must not engage in their own fact-finding or supplant the board's reasonable determinations, see Cellular Tel. Co., 166 F.3d at 494, such denials "are reviewed by this court more closely than standard local zoning decisions." Id. at 493.

To determine if a board's decision is supported by substantial evidence, the Court must "look to the record as a whole to see whether or not there is substantial evidence that the permit [was] denied on permissible grounds . . . ." Id. at 495. The Court must "overturn the board's decision . . . if it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the

8

record in its entirety furnishes, including the body of evidence opposed to the [b]oard's view." SBA Communications, Inc., 112 F. Supp. 2d at 237 (quoting BellSouth Mobility Inc. v. Gwinnett County, 944 F. Supp. 923, 928 (N.D. Ga. 1996)). If the Court finds that even one reason given for the denial is supported by substantial evidence, the decision of the local zoning body cannot be disturbed. See, e.g., id. at 237.

B. Defendant's Decision Violated the TCA[2]

Here, the Board's position that its decision was based on substantial evidence can only be described as preposterous.

1. Aesthetic Considerations

At the hearing Verizon presented testimony from two planning, zoning, and visual impact experts, and introduced into evidence a visual report and several photo simulations ("Simulations"). These Simulations compare, from nearly every vantage point, the Property as it now appears to the Property as it will appear after the Facility is built and the antennas are hung. Verizon has attached the Simulations as an exhibit to its Complaint. In addition to this considerable evidence about the aesthetic impact of the Facility and the antennas, the Board

---

[2] Because the Court finds that Plaintiff is entitled to relief based on its TCA claim, it need not address Plaintiff's alternative arguments in detail. The Court notes, however, that Plaintiff has easily established an Article 78 violation; because the Denial is unsupported by any evidence, the Board's decision was "arbitrary and capricious" and "significantly flawed in its analysis and conclusions[.]" See Omnipoint Comm., Inc. v. City of White Plains, 175 F. Supp. 2d 697, 714 (S.D.N.Y. 2001) (internal quotations omitted).

9

considered the testimony of several residents, one of whom happened to be an architect, who testified, essentially, that they thought the Facility and the antennas would be obstructive to the neighborhood.

After viewing these Simulations, the Court agrees with Verizon and concludes as follows: (1) the Facility looks just like a part of the roof of the existing building; (2) the two flush-mounted antennas will be barely discernable since they will be hung at or below the roofline and painted to match the exterior of the building; and (3) the remaining eight antennas mounted to the existing building penthouse and communication equipment will be entirely concealed behind RF stealth panels designed to resemble the existing brick facade of the Building. In short, the Board's denial of the Application on aesthetic grounds is not supported by <u>any</u> evidence, but merely the speculation of several residents.

2. <u>Verizon's Need for the Facility</u>

Section 246-5.5.9.3.2 of the Town Code provides:

> The applicant shall also prepare and submit a study which demonstrates a public need for each such tower based upon an area service plan which minimizes the number of such facilities within the town, maximizes co-location and shared use of existing or proposed towers and analyzes alternatives which may be available to minimize visual impacts and exposure levels.

(Def.'s Mem. in Opp'n 4 (citing Town Code).)

The Board maintains that the evidence presented at the Hearing regarding Verizon's need for the facility was lacking because

> there was no testimony from any wireless users--i.e., the residents--of any service deficiencies. In fact, those residents who mentioned it, including at least one with Verizon as a carrier, noted that they have no service problems. (98) The methodology used for determining need was also questioned. (38) Moreover, Verizon's propagation maps merely reflect Verizon's own service gap, not a gap in wireless coverage for the public, the users. Cite. [sic] The Town Code explicitly requires a demonstration of a "public need" for coverage, not a carrier's need.

(Def.'s Mem. in Opp'n 10 (internal citations omitted).)

> A coverage gap exists when
>
> a remote user of those services is unable to either connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication. When a coverage gap exists customers cannot receiv[e] and send [ ] signals, and when customers pass through a coverage gap their calls are disconnected.

Omnipoint Holdings, 2008 U.S. Dist. LEXIS 111741, at *3. In the Second Circuit, a "coverage gap" or a "need" for a proposed site is found to be substantial by the Courts where, inter alia, the coverage needed by a carrier is not limited to a small number of houses in a rural area or merely the interior of buildings in a sparsely populated area. See, e.g., Nextel Partners, Inc. v. Town of Amherst, 251 F. Supp. 2d 1187 (W.D.N.Y. 2003). cf

Willoth, 176 F.3d 630, 643-44 (2d Cir. 1999) ("[w]here the holes in coverage are very limited in number or size (such as the interiors of buildings in a sparsely populated rural area, or confined to a limited number of houses or spots as the area covered by buildings increases) the lack of coverage likely will be de minimis . . . .").

In support of the Application, Verizon elicited the testimony of Tony Wells, a Verizon RF expert, who quantified the size of the coverage gap as extending approximately 1.5 miles from north to south and slightly less than one mile from east to west and including populated areas and highly traveled roadways in Bethpage, including Bethpage State Parkway and New York State Route 135. It also provided propagation maps and RF affidavits. Additionally, Verizon provided evidence of how the Facility and antennas would fill that gap. Verizon maintains that this evidence is sufficient to establish a coverage gap, citing, for example, Village of Tarrytown Planning Board, 302 F. Supp. 2d at 218. The Court agrees.

Defendant argues that Verizon has not satisfied the requirements of the Town code because it has only established the "carrier's need" and not the "public need" for an additional cell site. This mincing of words is absurd: because the carrier is only maintaining service for its customers, the public, those needs are one in the same. Second, the Board implies that

12

telecommunications carriers can only establish a public need for additional cell sites by calling as witnesses a large number of cellular customers within the coverage gap to testify about their poor coverage. Since one Verizon customer testified at the Hearing that he had good coverage, and Verizon did not offer any testimony from customers with poor signal, Defendant disregarded Verizon's other evidence of a coverage gap, and found that Verizon did not meet its burden.

After reviewing the record, the Court concludes that Verizon met its burden of demonstrating a coverage gap. The Board's conclusion to the contrary, which ignored the evidence presented by Verizon and instead credited the testimony of a single Verizon customer, was not based on substantial evidence.

### 3. Investigation of Alternative Sites

In Willoth, the Second Circuit found that "local governments may reasonably take the location of the telecommunications tower into consideration when deciding whether [ ] to require a more probing inquiry . . . ." Willoth, 176 F.3d at 639. A local board is justified in considering the availability of alternatives that might create less disruption to the community's zoning plan. See id. at 643.

Here, the Court must ascertain whether there is substantial evidence to support the Board's finding that alternative sites were not investigated properly, based on

evaluation of the entire record, including opposing evidence. See Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523, 101 S. Ct. 2478, 2497, 69 L. Ed. 2d 185 (1981). The Board presented no evidence that other sites were appropriate substitutes for the Property. In particular, the Board seems to focus on a local Sleepy's mattress store as a viable alternative site. But Verizon clearly explained, at the Hearing and in its supporting papers here, why the Sleepy's site is inappropriate: after significant negotiation, the owner of the Sleepy's building continually insisted on a term in the lease agreement that gave either party the right to unilaterally terminate the agreement; thus, at any time, Verizon could be forced to remove the Facility and the antennas, causing a significant disruption in service on its network. Verizon gave similar, good-faith justifications for why all other sites, including ones suggested by the Board and others it sought out on its own, would not substitute for the Property.

After reviewing the record, the Court concludes that Verizon met its burden of investigating alternatives and presented credible evidence regarding the infeasibility of the sites. The Board's conclusion to the contrary was not based on substantial evidence.

## CONCLUSION

For the reasons set forth herein, the Court GRANTS Plaintiff's motion.  It is hereby ORDERED that the Defendant shall, within 30 days of the date of this Order, grant Plaintiff's application and issue the special use permit and/or variance and such other permits or licenses which are necessary to effectuate the installation which is the subject of this action.  Plaintiff is directed to update the Court via letter filing when Defendant has complied with the Court's directives.  The Clerk of the Court is directed to mark this matter CLOSED.  If Defendant fails to comply with the Court's directives within 30 days, Plaintiff may seek (1) to reopen the case and (2) sanctions against the Defendant.

SO ORDERED.

_____
Joanna Seybert, U.S.D.J.

Dated:   September 30, 2010
         Central Islip, New York